ORDERED.

**Dated:  February 24, 2016**

Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                                      Case No. 9:15-bk-01763-FMD
                                                            Chapter 7

      Karl Fred Jans and
      Billie Jo Jans,

          Debtors.
_____/

### SUPPLEMENTAL MEMORANDUM OPINION AND ORDER
### OVERRULING OBJECTION TO CLAIM OF EXEMPTION

     Florida Statutes section 222.11 provides that the earnings of a head of family for personal services or labor, whether denominated as wages, salary, commission, or bonus, are exempt from attachment or garnishment unless the head of family has agreed to otherwise in writing. A debtor's ability to claim "earnings" as exempt depends upon whether the earnings are derived from activities that more closely resemble the performance of a job than the operation of a business. In this case, the activities of Debtor that resulted in payment of the earnings at issue were in the nature of a job. Therefore, Debtor is entitled to claim the funds as exempt "earnings."

## Facts

Debtor, Billie Jo Jans ("Debtor"), is a licensed real estate agent. In July 2014, Debtor entered into a letter agreement (the "Letter Agreement") with The Ronto Group to serve as a sales associate for pre-construction sales of condominium units at the development project known as Seaglass at Bonita Bay ("Seaglass").[1] In August 2014, Debtor also executed an Independent Contractor Agreement with a responsible broker in connection with her position as sales agent.[2] Debtor does not have an ownership interest in The Ronto Group or in Seaglass's developer.

Under the Letter Agreement, Debtor was to receive a monthly draw of $4,000.00 as an advance on future commissions. Debtor also served as the team leader/office manager of the sales agents for which she was compensated $2,500.00 per month. In the Independent Contractor Agreement, Debtor acknowledged that she was working as an independent contractor and that she would not be treated as an employee for any purpose. Debtor was responsible for her own tax withholding and was not entitled to paid sick leave, vacation, or any other fringe benefits.

The Ronto Group required sales coverage at Seaglass's sales office on Monday through Saturday from 10 a.m. to 6 p.m. and on Sunday from 12 p.m. to 5 p.m. Within those parameters, Debtor, as team leader, set the individual work schedules for herself and her two fellow sales agents. Additionally, The Ronto Group required the sales agents to attend weekly meetings and to work from Seaglass's sales office. Debtor was required to use her own vehicle to take prospective purchasers on tours and to maintain and pay for her own auto insurance.

Debtor did not pay rent for the office space or premiums for professional malpractice insurance. Nor did Debtor prepare the marketing materials in connection with the sales effort. The

---

[1] Doc. No. 55-4.
[2] Doc. No. 55-5.

Ronto Group's executive vice-president and Seaglass's project manager supervised Debtor's performance.

Debtor and her husband filed their Chapter 7 bankruptcy petition on February 24, 2015. In her bankruptcy schedules, Debtor listed funds in two separate bank accounts totaling $4,779.85. Debtor claimed those funds as exempt as wages under Fla. Stat. § 222.11(2)(b).[3] It is undisputed that the source of the funds on deposit was compensation paid to Debtor by The Ronto Group.[4]

Creditors McGarvey Custom Homes, Inc. and J. McGarvey Construction Company, Inc. (collectively, "McGarvey") objected to Debtor's claim of exemption, arguing that the exemption afforded by Fla. Stat. § 222.11 does not apply to the funds in Debtor's bank account because they were derived from her services as an independent contractor and therefore cannot qualify as "earnings."[5] McGarvey also argues that because Debtor's compensation was based on commissions (after offsetting the monthly draw), it was not a "a sum certain" and does not meet the definition of "earnings" set forth in Fla. Stat. § 222.11(1)(a). The parties do not dispute that Debtor is the "head of family" for purposes of applying the statute.

### Legal Analysis

The term "earnings" is defined in Fla. Stat. § 222.11(1)(a) as including "compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus." Florida Statutes section 222.11(1)(b) then defines "disposable earnings" as "that part of the earnings of any head of family remaining after the deduction from those earnings of any amounts required by law to be withheld."

---

[3] Doc. No. 1, p. 23.
[4] Although Debtor received a postpetition payment for commissions she was due in connection with contracts on which non-refundable deposits were received, those commissions are not at issue here.
[5] Doc. No. 19, ¶ 10.

Under Fla. Stat. § 222.11(2)(b), disposable earnings of a head of a family that are "greater than $750 a week may not be attached or garnished unless such person has agreed otherwise in writing." Debtor did not agree to the garnishment. Therefore, the issues for the Court to resolve are whether Debtor was paid in money of a sum certain and whether Debtor's compensation can be characterized as "earnings."

## I.      Debtor was compensated in money of a sum certain.

Although the amount of Debtor's compensation depended on the commissions she ultimately earned, this does not mean that she was not paid in money of "a sum certain." The statute covers both compensation paid (past tense) and payable (future tense). In a case where a debtor has already been paid, the court need only determine whether the compensation was in fact paid in a sum certain.

For example, in *In re Holmes*,[6] the debtor worked as a bartender. All orders were subject to a service charge. The debtor's employer paid the service charge to the debtor in regular paychecks under a line item labeled "gratuities." The court held that those gratuities were exempt "earnings." Although *Holmes* did not contain a lengthy analysis of the meaning of the phrase "sum certain," the court's holding impliedly rejects McGarvey's argument and instead adopts a retrospective approach to determine whether the compensation the debtor had already received was paid in a sum certain.

Like the debtor in *Holmes*, Debtor had already been paid the compensation at issue when McGarvey filed its objection. The amount of her compensation was set by the Letter Agreement. Indeed, McGarvey's objection to Debtor's claim of exemption specifically identifies the amount at issue. McGarvey's argument also runs contrary to the express language of the statute, as commissions and bonuses—forms of compensation that are inherently speculative—are specifically included as types of compensation that can be exempted.

---

[6] 414 B.R. 868 (Bankr. S.D. Fla. 2009).

The Court concludes that Debtor was compensated in a sum certain.

**II.    Debtor's status as an independent contractor does not preclude her, as a matter of law, from claiming the "earnings" exemption.**

Florida Statutes section 222.11 was amended in 1993. Prior to the October 1, 1993 effective date of the statutory amendments, the statute provided for an exemption for "any *wages* deposited in any bank account maintained by the debtor when said funds can be traced and properly identified as *wages.*" (emphasis supplied). Analyzing the meaning of the term "wages" as used in the statute, Florida state and bankruptcy courts held that "wages" are compensation paid only to employees and, therefore, independent contractors (who, by definition, are not employees) could not claim as exempt the funds they are paid in connection with their services.[7]

But after the 1993 statutory amendments, courts eschewed the bright-line distinction between "employees" and "independent contractors." For example, in *In re Zamora*,[8] the court stated that the label of "employee" or "independent contractor" is no longer the deciding factor. Instead, the court stated that "the relevant inquiry is whether the debtor's [income-producing] activities were essentially a job or whether they were in the nature of running a business."[9] The court held that an attorney, a sole practitioner who earned revenue both from his law practice and from managing a wholly owned corporation, could not claim the exemption because he was running a business, not working at a job. The court based its holding on the fact that the attorney had complete control over the amount and timing of his compensation and the terms of his employment, as well as the absence of an arms-length employment agreement.[10]

---

[7] *See, e.g., In re Schlein*, 8 F.3d 745, 755 (11th Cir. 1993) (holding that the use of the term "wages" throughout the statute precluded an interpretation that would extend to independent contractors); *In re Montoya*, 77 B.R. 926 (Bankr. M.D. Fla. 1987).
[8] 187 B.R. 783 (Bankr. S.D. Fla. 1995).
[9] *Id.* at 785.
[10] *Id.*

In *In re Tobkin*,[11] the court expressly adopted the holding of *Zamora* and also observed that other courts, including Florida federal district courts, bankruptcy courts, and state courts, have done the same.[12] Likewise, in *In re Im*,[13] the court cited *Zamora* and *Tobkin* for the proposition that the "true test is whether the debtor's activities are a job or more in the nature of running a business."[14] The Eleventh Circuit Court of Appeals recently affirmed the bankruptcy court's ruling in *Tobkin*.[15] In so doing, the court, citing *Zamora* with approval, acknowledged a difference between proceeds derived from running a business and those generated under the terms of an arms-length employment agreement where a set salary or amount of wages is prescribed.[16]

Here, Debtor, though an independent contractor, was not running a business. Her compensation was set by the terms of the Letter Agreement; she did not retain control over either the amount or timing of her payments. Moreover, even though Debtor enjoyed some discretion in setting her own (and her colleagues') work schedules, that discretion was tempered by and subject to the overall office coverage required by The Ronto Group. Debtor had to comply with numerous requirements in order to remain employed as a sales agent for the Seaglass project; the performance of her duties was more akin to working at a job than running a business. Therefore, the compensation she derived from her income-producing activities qualifies as "earnings" for purposes of applying the exemption under Fla. Stat. § 222.11.

---

[11] 2013 WL 1292679 (Bankr. S.D. Fla. Mar. 26, 2013).
[12] *Id.* at *3, n. 12-14 (internal citations omitted).
[13] 495 B.R. 46 (Bankr. M.D. Fla. 2013).
[14] *Id.* at 50.
[15] *In re Tobkin*, 2015 WL 7144748 (11th Cir. Nov. 16, 2015).
[16] *Id.* at *2.

Accordingly, it is

**ORDERED:**

The *Amended Objection of Creditors McGarvey Custom Homes, Inc., and J. McGarvey Construction Company, Inc., to Debtors' Claimed Exemptions* (Doc. No. 19) is **OVERRULED**.


The Clerk's office is directed to serve a copy of this Order on interested parties via CM/ECF.